UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

ARLENE SPILFOGEL,

Plaintiff,

v.

Civil Action No. 09-80813

FOX BROADCASTING COMPANY,
a Delaware corporation, LANGLEY
PRODUCTIONS, INC., a California
corporation, and TURNER BROADCASTING
SYSTEM, INC., a Georgia corporation,

CIV-RYSKAMP

Defendants.

_____/

## COMPLAINT

Plaintiff **Arlene Spilfogel,** by and through her undersigned counsel, sues Defendants

FOX Broadcasting Company (hereinafter "FOX"), Langley Productions, Inc. (hereinafter

"Langley"), and Turner Broadcasting System, Inc. (hereinafter "Turner"), and alleges as follows:

### JURISDICTION

1.      Plaintiff is a citizen of the State of Florida.

2.      FOX is a corporation incorporated under the laws of Delaware.

3.      Langley is a corporation incorporated under the laws of California.

4.      Turner is a corporation incorporated under the laws of Georgia.

5.      The amount in controversy, without interest and costs, exceeds the sum or value

specified by 28 U.S.C. §1332 (diverse citizenship).

6.      Each of the following causes of action against FOX arises out of its committing a

tortious act in the State of Florida.

7.     Each of the following causes of action against Langley arises out of its committing a tortious act in the State of Florida.

8.     Each of the following causes of action against Turner arises out of its committing a tortious act in the State of Florida.

9.     All three Defendants engage in substantial and not isolated business activities in the State of Florida.

10.    The Defendants are subject to the personal jurisdiction of this Court pursuant to §48.193, Fla. Stat.

11.    Venue is proper, pursuant to 28 U.S.C. §1391(a)(2), because a substantial part of the events or omissions giving rise to this claim occurred in Palm Beach County, Florida.

### GENERAL ALLEGATIONS AND FACTUAL BACKGROUND

12.    Ms. Spilfogel is a person of quiet temperament and discreet character and deportment, who has lived a quiet and private life, avoiding notoriety, and has at all times sought to preserve the dignified respect of her family, friends, companions, and neighbors in all social relationships.

13.    Langley is an entertainment production company that produces the television series COPS. COPS is a reality television series.   Episodes of COPS normally televise alleged criminals, many of them violent in nature, as they commit crimes or are confronted and arrested by law enforcement officers.

14.    FOX is a broadcasting company that broadcasts the television series COPS on its television network channel called FOX.

15.    Turner is a broadcasting company that rebroadcasts episodes from the television series COPS on its television network channel TruTV (f/k/a CourtTV).

16.    Late in the evening of September 25, 2005, Ms. Spilfogel was stopped by a law enforcement officer in Palm Beach County, Florida, while driving home from a visit with her

daughter. As a result of her visit with her daughter, Ms. Spilfogel was feeling particularly nervous and upset. The officer conversed at length with Ms. Spilfogel and ultimately cited her for driving with "no tag light/no head light".

17. Ms. Spilfogel's encounter with the law enforcement officer was captured on film by a duly authorized agent or representative of Langley, without Ms. Spilfogel's consent.

18. Langley, through its duly authorized agents and representatives, without Ms. Spilfogel's prior knowledge or consent, produced and caused to be broadcast throughout the United States and other parts of the world an episode of COPS that included scenes from Ms. Spilfogel's September 2005 encounter with the law enforcement officer in Palm Beach County, Florida.

## COUNT I
### Invasion of Privacy against Langley and FOX
### (Initial Broadcasts)

19. This is an action against Langley and FOX for damages for invasion of privacy.

20. Plaintiff incorporates the allegations in paragraphs 1-18 as if fully set forth herein.

21. On one or more dates between July 2006 to September 2006, Langley and FOX, through their duly authorized agents and representatives, without Ms. Spilfogel's prior knowledge or consent, broadcast and caused to be transmitted on FOX television network throughout the United States and other parts of the world an episode of COPS that included scenes from Ms. Spilfogel's September 2005 encounter with the law enforcement officer.

22. Defendants Langley and FOX, through their duly authorized agents or representatives, knew or should have known that Ms. Spilfogel did not want the matter filmed in such incident to be broadcast on national television and exposed to the general public.

23. Such filming, production and broadcast was and still is an intrusion upon Ms. Spilfogel's seclusion and privacy and an invasion upon her private life.

24.     Such filming, production and broadcast publicly disclosed private facts about Ms. Spilfogel's eccentricities, causing her to be held up to public ridicule.

25.     Such filming, production and broadcast exploited, and continues to exploit, Ms. Spilfogel's personality.

26.     Such unauthorized filming, production and broadcast is highly offensive to a reasonable person.

27.     Ms. Spilfogel's family members, friends, neighbors, acquaintances, synagogue members and the general public saw such telecasts portray Ms. Spilfogel in a degrading, embarrassing and scandalous manner.

28.     The incident captured by the filming, production and broadcast of Ms. Spilfogel's interaction with the law enforcement officer was not a matter of public concern.

29.     The production and broadcast of such incident brought Langley and FOX pecuniary profit and gain.

30.     As a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has been and continues to be subjected to public contempt, ridicule and inquisitive notice, which is utterly humiliating and traumatizing to her.

31.     As a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has suffered, and continues to suffer, a loss of dignity and self respect, loss of sleep, as well as severe mental pain, anguish and distress.

32.     As a further direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has become very reclusive, even ceasing to attend social gatherings, weekly outings and religious services.

33.     Additionally, as a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel sustained the following damages:

 a. Expenses for medical treatment

b. Severe mental anguish and emotional distress.

Wherefore, Plaintiff demands judgment against Defendants Langley and FOX, jointly and severally, for her damages, court costs and for such other or further relief as this Court may deem appropriate.

## COUNT II
### Invasion of Privacy against Langley and FOX
### (Second Broadcasts)

34.     This is an action against Langley and FOX for damages for invasion of privacy.

35.     Plaintiff incorporates the allegations in paragraphs 1-18 as if fully set forth herein.

36.     On or about October 28, 2006, Langley and FOX, through their duly authorized agents and representatives, without Ms. Spilfogel's prior knowledge or consent, broadcast and caused to be transmitted on FOX television network throughout the United States and other parts of the world an episode of COPS that included scenes from Ms. Spilfogel's September 2005 encounter with the law enforcement officer.

37.     Defendants Langley and FOX, through their duly authorized agents or representatives, knew or should have known that Ms. Spilfogel did not want the matter filmed in such incident to be broadcast on national television and exposed to the general public.

38.     Such filming, production and broadcast was and still is an intrusion upon Ms. Spilfogel's seclusion and privacy and an invasion upon her private life.

39.     Such filming, production and broadcast publicly disclosed private facts about Ms. Spilfogel's eccentricities, causing her to be held up to public ridicule.

40.     Such filming, production and broadcast exploited, and continues to exploit, Ms. Spilfogel's personality.

41.     The unauthorized filming, production and broadcast on the television series COPS is highly offensive to a reasonable person.

42.    Ms. Spilfogel's family members, friends, neighbors, acquaintances, synagogue members and the general public saw such telecasts portray Ms. Spilfogel in a degrading, embarrassing and scandalous manner.

43.    The incident captured by the filming, production and broadcast of Ms. Spilfogel's interaction with the law enforcement officer was not a matter of public concern.

44.    The broadcast of such incident brought Langley and FOX pecuniary profit and gain.

45.    As a direct and proximate result of the filming, production and broadcast, Ms. Spilfogel has been and continues to be subjected to public contempt, ridicule and inquisitive notice, which is utterly humiliating and traumatizing to her.

46.    As a direct and proximate result of the filming, production and broadcast, Ms. Spilfogel has suffered, and continues to suffer, a loss of dignity and self respect, loss of sleep, as well as severe mental pain, anguish and distress.

47.    As a further direct and proximate result of the filming, production and broadcast, Ms. Spilfogel has become very reclusive, even ceasing to attend social gatherings, weekly outings and religious services.

48.    Additionally, as a direct and proximate result of the filming, production and broadcast, Ms. Spilfogel sustained the following damages:

    a.  Expenses for medical treatment

    b.  Severe mental anguish and emotional distress.

Wherefore, Plaintiff demands judgment against Defendants Langley and FOX, jointly and severally, for her damages, court costs and for such other or further relief as this Court may deem appropriate.

**COUNT III**
**Invasion of Privacy against Langley and FOX**
**(Subsequent Broadcasts)**

49.     This is an action against Langley and FOX for damages for invasion of privacy.

50.     Plaintiff incorporates the allegations in paragraphs 1-18 as if fully set forth herein.

51.     From November 2006 to present, Langley and FOX, through their duly authorized agents and representatives, without Ms. Spilfogel's prior knowledge or consent, broadcast and caused to be transmitted on FOX television network throughout the United States and other parts of the world the same episode of COPS that included scenes from Ms. Spilfogel's September 2005 encounter with the law enforcement officer.

52.     In or about November 2006, Ms. Spilfogel instructed Langley, through its duly authorized agents or representatives, not to televise the COPS episode that had been filmed, produced and broadcast without her consent.

53.     Defendants Langley and FOX, through their duly authorized agents or representatives, knew or should have known that Ms. Spilfogel did not want the matter filmed in such incident to be broadcast on national television and exposed to the general public.

54.     Such filming, production and broadcast was and still is an intrusion upon Ms. Spilfogel's seclusion and privacy and an invasion upon her private life.

55.     Such filming, production and broadcast and rebroadcast publicly disclosed private facts about Ms. Spilfogel's eccentricities, causing her to be held up to public ridicule.

56.     Such filming, production and broadcast exploited, and continues to exploit, Ms. Spilfogel's personality.

57.     Such unauthorized filming, production and broadcast is highly offensive to a reasonable person.

58. Ms. Spilfogel's family members, friends, neighbors, acquaintances, synagogue members and the general public saw such telecasts portray Ms. Spilfogel in a degrading, embarrassing and scandalous manner.

59. The incident captured by the filming, production and broadcast of Ms. Spilfogel's interaction with the law enforcement officer was not a matter of public concern.

60. The broadcast of such incident brought Langley and FOX pecuniary profit and gain.

61. As a direct and proximate result of the filming, production and broadcast, Ms. Spilfogel has been and continues to be subjected to public contempt, ridicule and inquisitive notice, which is utterly humiliating and traumatizing to her.

62. As a direct and proximate result of the filming, production and broadcast, Ms. Spilfogel has suffered, and continues to suffer, a loss of dignity and self respect, loss of sleep, as well as severe mental pain, anguish and distress.

63. As a further direct and proximate result of the filming, production and broadcast, Ms. Spilfogel has become very reclusive, even ceasing to attend social gatherings, weekly outings and religious services.

64. Additionally, as a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel sustained the following damages:

    a. Expenses for medical treatment

    b. Severe mental anguish and emotional distress.

Wherefore, Plaintiff demands judgment against Defendants Langley and FOX, jointly and severally, for her damages, court costs and for such other or further relief as this Court may deem appropriate.

## COUNT IV
### Invasion of Privacy against Langley and Turner
### (Initial Rebroadcasts)

65.     This is an action against Langley and Turner for damages for invasion of privacy.

66.     Plaintiff incorporates the allegations in paragraphs 1-18 as if fully set forth herein.

67.     From January 2007 to October 2007, Langley and Turner, through their duly authorized agents and representatives, without Ms. Spilfogel's prior knowledge or consent, rebroadcast and caused to be transmitted on TruTV (f/k/a CourtTV) throughout the United States and other parts of the world the same episode of COPS that included scenes from Ms. Spilfogel's September 2005 encounter with the law enforcement officer.

68.     In or about November 2006, Ms. Spilfogel instructed Langley, through its duly authorized agents or representatives, not to televise the COPS episode that had been filmed, produced and broadcast without her consent.

69.     Defendants Langley and Turner, through their duly authorized agents or representatives, knew or should have known that Ms. Spilfogel did not want the matter filmed in such incident to be broadcast on national television and exposed to the general public.

70.     Such filming, production, broadcast and rebroadcast was and still is an intrusion upon Ms. Spilfogel's seclusion and privacy and an invasion upon her private life.

71.     Such filming, production and broadcast publicly disclosed private facts about Ms. Spilfogel's eccentricities, causing her to be held up to public ridicule.

72.     Such filming, production and broadcast exploited, and continues to exploit, Ms. Spilfogel's personality.

73.     Such unauthorized filming, production and broadcast is highly offensive to a reasonable person.

74.     Ms. Spilfogel's family members, friends, neighbors, acquaintances, synagogue members and the general public saw such telecasts portray Ms. Spilfogel in a degrading, embarrassing and scandalous manner.

75.     The incident captured by the filming, production and broadcast of Ms. Spilfogel's interaction with the law enforcement officer was not a matter of public concern.

76.     The broadcast and rebroadcast of such incident brought Langley and Turner pecuniary profit and gain.

77.     As a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has been and continues to be subjected to public contempt, ridicule and inquisitive notice, which is utterly humiliating and traumatizing to her.

78.     As a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has suffered, and continues to suffer, a loss of dignity and self respect, loss of sleep, as well as severe mental pain, anguish and distress.

79.     As a further direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has become very reclusive, even ceasing to attend social gatherings, weekly outings and religious services.

80.     Additionally, as a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel sustained the following damages:

   a.  Expenses for medical treatment

   b.  Severe mental anguish and emotional distress.

Wherefore, Plaintiff demands judgment against Defendants Langley and Turner, jointly and severally, for her damages, court costs and for such other or further relief as this Court may deem appropriate.

## COUNT V
### Invasion of Privacy against Langley and Turner
### (Second Rebroadcasts)

81.    This is an action against Langley and Turner for damages for invasion of privacy.

82.    Plaintiff incorporates the allegations in paragraphs 1-18 as if fully set forth herein.

83.    On or about November 2, 2007, Langley and Turner, through their duly authorized agents and representatives, without Ms. Spilfogel's prior knowledge or consent, rebroadcast and caused to be transmitted on TruTV (f/k/a CourtTV) throughout the United States and other parts of the world the same episode of COPS that included scenes from Ms. Spilfogel's September 2005 encounter with the law enforcement officer.

84.    In or about November 2006, Ms. Spilfogel instructed Langley, through its duly authorized agents or representatives, not to televise the COPS episode that had been filmed, produced and broadcast without her consent.

85.    Defendants Langley and Turner, through their duly authorized agents or representatives, knew or should have known that Ms. Spilfogel did not want the matter filmed in such incident to be broadcast on national television and exposed to the general public.

86.    Such filming, production, broadcast and rebroadcast was and still is an intrusion upon Ms. Spilfogel's seclusion and privacy and an invasion upon her private life.

87.    Such filming, production, broadcast and rebroadcast publicly disclosed private facts about Ms. Spilfogel's eccentricities, causing her to be held up to public ridicule.

88.    Such filming, production, broadcast and rebroadcast exploited, and continues to exploit, Ms. Spilfogel's personality.

89.    Such unauthorized filming, production and broadcast is highly offensive to a reasonable person.

90.    Ms. Spilfogel's family members, friends, neighbors, acquaintances, synagogue members and the general public saw such telecasts portray Ms. Spilfogel in a degrading, embarrassing and scandalous manner.

91.    The incident captured by the filming, production, broadcast and rebroadcast of Ms. Spilfogel's interaction with the law enforcement officer was not a matter of public concern.

92.    The broadcast and rebroadcast of such incident brought Langley and Turner pecuniary profit and gain.

93.    As a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has been and continues to be subjected to public contempt, ridicule and inquisitive notice, which is utterly humiliating and traumatizing to her.

94.    As a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has suffered, and continues to suffer, a loss of dignity and self respect, loss of sleep, as well as severe mental pain, anguish and distress.

95.    As a further direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has become very reclusive, even ceasing to attend social gatherings, weekly outings and religious services.

96.    Additionally, as a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel sustained the following damages:

    a.    Expenses for medical treatment

    b.    Severe mental anguish and emotional distress.

Wherefore, Plaintiff demands judgment against Defendants Langley and Turner, jointly and severally, for her damages, court costs and for such other or further relief as this Court may deem appropriate.

## COUNT VI
### Invasion of Privacy against Langley and Turner
### (Subsequent Rebroadcasts)

97.     This is an action against Langley and Turner for damages for invasion of privacy.

98.     Plaintiff incorporates the allegations in paragraphs 1-18 as if fully set forth herein.

99.     From November 2007 to present, Langley and Turner, through their duly authorized agents and representatives, without Ms. Spilfogel's prior knowledge or consent, rebroadcast and caused to be transmitted on TruTV (f/k/a CourtTV) throughout the United States and other parts of the world the same episode of COPS that included scenes from Ms. Spilfogel's September 2005 encounter with the law enforcement officer.

100.    In or about November 2006, Ms. Spilfogel instructed Langley, through its duly authorized agents or representatives, not to televise the COPS episode that had been filmed, produced and broadcast without her consent.

101.    Defendants Langley and Turner, through their duly authorized agents or representatives, knew or should have known that Ms. Spilfogel did not want the matter filmed in such incident to be broadcast on national television and exposed to the general public.

102.    Such filming, production, broadcast and rebroadcast was and still is an intrusion upon Ms. Spilfogel's seclusion and privacy and an invasion upon her private life.

103.    Such filming, production, broadcast and rebroadcast publicly disclosed private facts about Ms. Spilfogel's eccentricities, causing her to be held up to public ridicule.

104.    Such filming, production, broadcast and rebroadcasts exploited, and continues to exploit, Ms. Spilfogel's personality.

105.    Such unauthorized filming, production and broadcast is highly offensive to a reasonable person.

106.    Ms. Spilfogel's family members, friends, neighbors, acquaintances, synagogue members and the general public saw such telecasts portray Ms. Spilfogel in a degrading, embarrassing and scandalous manner.

107.    The incident captured by the filming, production and broadcast of Ms. Spilfogel's interaction with the law enforcement officer was not a matter of public concern.

108.    The broadcast and rebroadcast of such incident brought Langley and Turner pecuniary profit and gain.

109.    As a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has been and continues to be subjected to public contempt, ridicule and inquisitive notice, which is utterly humiliating and traumatizing to her.

110.    As a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has suffered, and continues to suffer, a loss of dignity and self respect, loss of sleep, as well as severe mental pain, anguish and distress.

111.    As a further direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has become very reclusive, even ceasing to attend social gatherings, weekly outings and religious services.

112.    Additionally, as a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel sustained the following damages:

   a.   Expenses for medical treatment

   b.   Severe mental anguish and emotional distress.

Wherefore, Plaintiff demands judgment against Defendants Langley and Turner, jointly and severally, for her damages, court costs and for such other or further relief as this Court may deem appropriate.

## COUNT VII
### Invasion of Privacy against Langley and FOX
### (Violation of §540.08, Fla. Stat. – Unauthorized
### Publication of Name or Likeness)

113.    This is an action against Langley and FOX for damages for invasion or privacy in violation of §540.08, Fla. Stat. (2006) for the unauthorized publication of Ms. Spilfogel's name or likeness.

114.    Plaintiff incorporates the allegations in paragraphs 1-18 as if fully set forth herein.

115.    From about July 2006 to December 2006, Langley and FOX, through their duly authorized agents and representatives, without Ms. Spilfogel's prior knowledge or consent, published one or more photographs of Ms. Spilfogel's September 2005 encounter with the law enforcement officer on the official COPS website <www.cops.com> and caused these images of Ms. Spilfogel to be transmitted on the internet throughout the United States and other parts of the world.

116.    Defendants FOX and Langley, through their duly authorized agents or representatives, knew or should have known that Ms. Spilfogel did not want the matter filmed in such incident to be published on the internet and exposed to the general public.

117.    The publication and display of Ms. Spilfogel's photograph by FOX and Langley is without Ms. Spilfogel's written or oral consent.

118.    Such filming, production and publication was and still is an intrusion upon Ms. Spilfogel's seclusion and privacy and an invasion upon her private life.

119.    Such filming, production and broadcast exploited, and continues to exploit, Ms. Spilfogel's personality.

120.    The unauthorized publication of a person's image on the COPS television series website is highly offensive to a reasonable person.

121.    Ms. Spilfogel's family members, friends, neighbors, acquaintances, synagogue members and the general public saw such publication portray Ms. Spilfogel in a degrading, embarrassing and scandalous manner.

122.    The interaction captured by the filming, production and broadcast of Ms. Spilfogel's interaction with the law enforcement officer was not a matter of public concern.

123.    The publication of such incident brought FOX and Langley pecuniary profit and gain.

124.    As a direct and proximate result of the publication, Ms. Spilfogel has been and continues to be subjected to public contempt, ridicule and inquisitive notice, which is utterly humiliating and traumatizing to her.

125.    As a direct and proximate result of the publication, Ms. Spilfogel has suffered, and continues to suffer, a loss of dignity and self respect, loss of sleep, as well as severe mental pain, anguish and distress.

126.    As a further direct and proximate result of the publication, Ms. Spilfogel has become very reclusive, even ceasing to attend social gatherings, weekly outings and religious services.

127.    Additionally, as a direct and proximate result of the publication, Ms. Spilfogel sustained the following damages:

      a.  Expenses for medical treatment

      b.  Severe mental anguish and emotional distress.

Wherefore, Plaintiff demands judgment against Defendants Langley and FOX, jointly and severally, for her damages, court costs and for such other or further relief as this Court may deem appropriate.

**COUNT VIII**
**Defamation by Implication against**
**Langley and Turner**

128.    This is an action against Langley and Turner for damages for defamation by implication.

129.    Plaintiff incorporates the allegations in paragraphs 1-18 as if fully set forth herein.

130.    On or about November 2, 2007, Langley and Turner, through their duly authorized agents and representatives, without Ms. Spilfogel's prior knowledge or consent, broadcast and caused to be transmitted on Court TV (TruTV) throughout the United States and other parts of the world an episode of COPS that included scenes from Ms. Spilfogel's September 2005 encounter with the law enforcement officer in Palm Beach County, Florida.

131.    In or about November 2006, Ms. Spilfogel instructed Langley, through its duly authorized agents or representatives, not to televise the COPS episode that had been filmed, produced and broadcast without her consent.

132.    Defendants Langley and Turner, through their duly authorized agents or representatives, knew or should have known that Ms. Spilfogel did not want the matter filmed in such incident to be broadcast on national television and exposed to the general public.

133.    The television series COPS typically shows alleged criminals, lawless "trailer trash" and scofflaws, as they commit crimes or misdemeanors, many of them violent in nature, or engage in vulgarities or antisocial behaviors, or while they are confronted and arrested by law enforcement officers.

134.    Such filming, production and broadcast put Ms. Spilfogel on COPS, a television series whose above-described reputation was and is very widely known.

135.    Such filming, production and broadcast of the segment showing Ms. Spilfogel on COPS suggests to the public that Ms. Spilfogel is a criminal, lawless "trailer trash" or a scofflaw and not a reputable member of society.

136.    Ms. Spilfogel's neighbors, acquaintances, synagogue members and the general public saw such telecasts portray Ms. Spilfogel as a typical "perpetrator" on COPS, in addition to portraying her in a degrading, embarrassing and scandalous manner.

137.    Such filming, production and broadcast of the episode of COPS prejudices Ms. Spilfogel in the eyes of a substantial and respectable segment of the community.

138.    Such filming, production and broadcast has harmed, and continues to harm, Ms. Spilfogel's reputation by lowering her estimation in the community, as well as among neighbors, acquaintances, synagogue members and the general public.

139.    The production and broadcast of such incident brought Langley and Turner pecuniary profit and gain.

140.    As a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has been and continues to be exposed to public contempt, ridicule and inquisitive notice, which is utterly humiliating and traumatizing to her.

141.    As a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has suffered, and continues to suffer, a loss of dignity and self respect, loss of sleep, as well as severe mental pain, anguish and distress.

142.    As a further direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has become very reclusive, even ceasing to attend social gatherings, weekly outings and religious services.

143.    Additionally, as a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel sustained the following damages:

    a.   Expenses for medical treatment

    b.   Severe mental anguish and emotional distress.

Wherefore, Plaintiff demands judgment against Defendants Langley and Turner, jointly and severally, for her damages, court costs and for such other or further relief as this Court may deem appropriate.

## COUNT IX
### Defamation by Implication against FOX,
### Langley and Turner – Subsequent Rebroadcasts

144.   This is an action against FOX, Langley and Turner for damages for defamation by implication.

145.   Plaintiff incorporates the allegations in paragraphs 1-18 as if fully set forth herein.

146.   From November 2007 to present, FOX, Langley and Turner, through their duly authorized agents and representatives, without Ms. Spilfogel's prior knowledge or consent, broadcast and caused to be transmitted throughout the United States and other parts of the world an episode of COPS that included scenes from Ms. Spilfogel's September 2005 encounter with the law enforcement officer.

147.   In or about November 2006, Ms. Spilfogel instructed Langley, through its duly authorized agents or representatives, not to televise the COPS episode that had been filmed, produced and broadcast without her consent.

148.   Defendants FOX, Langley and Turner, through their duly authorized agents or representatives, knew or should have known that Ms. Spilfogel did not want the matter filmed in such incident to be broadcast on national television and exposed to the general public.

149.   The television series COPS typically shows alleged criminals, lawless "trailer trash" and scofflaws, as they commit crimes or misdemeanors, many of them violent in nature, or engage in vulgarities or antisocial behaviors, or while they are confronted and arrested by law enforcement officers.

150.   Such filming, production and broadcast put Ms. Spilfogel on COPS, a television series whose above-described reputation was and is very widely known.

151.    Such filming, production and broadcast of the segment showing Ms. Spilfogel on COPS suggests to the public that Ms. Spilfogel is a criminal, lawless "trailer trash" or a scofflaw and not a reputable member of society.

152.    Ms. Spilfogel's neighbors, acquaintances, synagogue members and the general public saw such telecasts portray Ms. Spilfogel as a typical "perpetrator" on COPS, in addition to portraying her in a degrading, embarrassing and scandalous manner.

153.    Such filming, production and broadcast of the episode of COPS prejudices Ms. Spilfogel in the eyes of a substantial and respectable segment of the community.

154.    Such filming, production and broadcast has harmed, and continues to harm, Ms. Spilfogel's reputation by lowering her estimation in the community, as well as among neighbors, acquaintances, synagogue members and the general public.

155.    The production and broadcast of such incident brought FOX, Langley and Turner pecuniary profit and gain.

156.    As a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has been and continues to be exposed to public contempt, ridicule and inquisitive notice, which is utterly humiliating and traumatizing to her.

157.    As a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has suffered, and continues to suffer, a loss of dignity and self respect, loss of sleep, as well as severe mental pain, anguish and distress.

158.    As a further direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel has become very reclusive, even ceasing to attend social gatherings, weekly outings and religious services.

159.    Additionally, as a direct and proximate result of the filming, production, telecast and rebroadcast, Ms. Spilfogel sustained the following damages:

   a.    Expenses for medical treatment

b.  Severe mental anguish and emotional distress.

Wherefore, Plaintiff demands judgment against Defendants FOX, Langley and Turner, jointly and severally, for her damages, court costs and for such other or further relief as this Court may deem appropriate.

### Demand for Jury Trial

Plaintiff demands a trial by jury on all issues so triable.

> WARREN GAMMILL & ASSOCIATES
> Counsel for Plaintiff
> Gammill@MiamiLawOffice.com
> Suite 1050, Courthouse Tower
> 44 West Flagler Street
> Miami, Florida 33130
> Telephone: (305) 579-0000
> Telecopier: (305) 371-6927

By: _____
> Warren P. Gammill
> Fla. Bar No. 151221
> Madelin D'Arce
> Fla. Bar No. 055675

H:\Data2\Spilfogel, Arlene\Complaint - Federal Court; Arlene Spilfogel.doc

°s JS 44   (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

Arlene Spilfogel

**(b)** County of Residence of First Listed Plaintiff   Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Warren P. Gammill, Esq., Warren Gammill & Associates
44 West Flagler Street, Suite 1050, Miami, Florida 33130
(305) 579-0000

## DEFENDANTS

FOX Broadcasting Company, a Delaware corporation, et al.

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

Attorneys (If Known)

**(d)** Check County Where Action Arose:   ☐ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☑ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE
HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☑ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

WPB09cv80813 - Ryskamp/Vitunac

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☑ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. Security | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities | ☐ 540 Mandamus & Other | ☐ 462 Naturalization | | ☐ 950 Constitutionality of State |
| | Employment | ☐ 550 Civil Rights | Application | | Statutes |
| | ☐ 446 Amer. w/Disabilities | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus-Alien | | |
| | Other | | Detainee | | |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Re-filed-
(see VI below)

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions
second page):

a) Re-filed Case ☐ YES ☐ NO       b) Related Cases ☐ YES ☐ NO

JUDGE                                DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 USC § 1332; diversity of citizenship

LENGTH OF TRIAL via  **2**  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☑ Yes   ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO
THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   5/26/09

FOR OFFICE USE ONLY

AMOUNT 350.       RECEIPT # 100192 3

05/29/09